. (36 App. Div. 163.)

HEFFERNAN v. ALFRED BARBER'S SON.

(Supreme Court, Appellate Division, First Department. January 20, 1899.)

1. HIGHWAYS—LAW OF THE ROAD—COLLISION.
    A driver of a coal cart on the left side of a street, meeting another cart on the same side, is bound to turn to the right, where the driver of the other refuses to grant his request to let him keep on the left side, so that he could conveniently turn into his coal yard, which opened into the street near by, to the knowledge of such other.

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
    Plaintiff testified that, while he was driving a cart on the right side of a street, he met defendant, driving in an opposite direction, on the same side; that when he saw that he persistently kept his course, he did his best to turn to the left to avoid the collision which occurred and caused the injuries sued for. Defendant testified that he stopped when plaintiff ap-

proached; that plaintiff failed to sit on the end of the seat where he could calculate the distance between the carts; that plaintiff ought to have turned out sooner. *Held* a question for the jury whether plaintiff was guilty of contributory negligence.

3. SAME—TRIAL—INSTRUCTIONS.

In an action for injuries occasioned by a collision of coal carts, an instruction that plaintiff could not recover if he calculated to pass defendant's cart, when he could in safety have avoided the collision, is erroneous as making it incumbent on him to have avoided the collision if it was possible to do so, rather than requiring him merely to exercise reasonable care.

4. SAME—AVOIDANCE OF DANGER—MISCALCULATION.

One who is put in immediate danger by the negligence of another may recover for injuries resulting therefrom, though he miscalculated as to the best means of escaping the danger.

5. SAME.

A driver of a cart who refused to turn to the right when he met another cart, with which he collided, was not free from negligence, as a matter of law, because the other driver could have avoided the collision after he saw that the former persisted in his course.

Appeal from trial term, New York county.

Action by Timothy Heffernan against Alfred Barber's Son. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Arthur C. Palmer, for appellant.

M. P. O'Connor, for respondent.

BARRETT, J. The action was for damages which the plaintiff sustained as the result of a collision between two coal carts. The plaintiff was driving the one; one Begley, a driver of the defendant's, the other. The collision occurred in Water street, between Oliver street and James Slip. The plaintiff was going in a southwesterly direction, and was on the northwesterly side of the street. Begley turned into Water street from South street, up James Slip. This brought him into Water street heading in a northeasterly direction, and he proceeded on the left side of that street, contrary to the rule of the road. The drivers called out to each other to change their course. The defendant's coal yard was in Water street, on its southeasterly side, and Begley testified that he requested the plaintiff to swing his cart over a little to the left, so as to give him (Begley) a chance to turn in to this coal yard. The plaintiff, it is claimed, knew where the defendant's coal yard was, and that Begley was going there. He, however, desired that Begley should keep to his own side of the road; and it was not until he perceived that Begley persisted in keeping to the left, and thus precipitating a collision, that he turned in the other direction,—that is, to his left. Begley throughout kept right on in his original direction, thus forcing his cart in between the plaintiff's cart and the curb, where, in the end, the hubs of the two carts collided. The defendant contends that the collision resulted from the plaintiff's refusal to turn out sooner than he did, and also from the fact that the plaintiff was sitting on the left of the driver's seat of his

own cart, and that this prevented his seeing the hubs of the two wagons, and caused him, when he finally turned out, to miscalculate the distance of safety.

The least that can be said upon all these questions of fact is that they were for the jury. Begley was apparently in the wrong throughout. No matter where his master's coal yard was, he had no right to violate the rule of the road, and to force the plaintiff, at the risk of a collision, to turn out for him. The plaintiff had a perfect right to pursue his lawful course, and he acted with great moderation in submitting, as he did, to Begley's unwarranted demands. It was natural that he should submit reluctantly, and should delay to turn out until quite certain that Begley would not himself deviate from his course. The jury believed the plaintiff's story, as they were authorized to do. Whether Begley stopped, as he said he did; whether the plaintiff should have turned out sooner than he did; whether his position on the driver's seat caused him to miscalculate the distance between the hubs of the two carts; whether he did the best he could under the circumstances,—all these were, to say the least, questions for the jury; and we see no reason to disturb their verdict, embracing, as it necessarily did, an answer favorable to the plaintiff upon these and all other questions of fact.

Two exceptions were taken to the learned trial judge's rulings. They were to the refusal to charge the following propositions:

(1) "If the jury believe that the plaintiff calculated to pass the defendant's cart, when he could in safety have avoided the collision, such calculation on his part defeats his recovery in this action."

(2) "If the jury believe that the plaintiff had a plain, unobstructed view of the advance of the defendant's cart, for a long distance, and saw the direction which defendant's cart was taking, and plaintiff could have avoided the collision, it was not negligence on the part of the defendant's driver to keep upon the course which he was going prior to the collision."

The first of these propositions omitted all reference to reasonable care and prudence. In substance, it made the plaintiff a guarantor of the success of the calculation; in other words, that he must avoid the collision if it were possible to do so, not if it could be avoided with the exercise of reasonable care. The proposition also misapplied the rule as to miscalculation, when one who is in no immediate peril places himself unnecessarily in the perilous situation, and takes the chances of getting through safely. If there was here a miscalculation, it was by one who was put in immediate jeopardy by the defendant's negligence, and who simply calculated how best to escape.

The second proposition is quite obscure. The premise bears upon the plaintiff's negligence; the conclusion upon the defendant's. It was certainly neither negligence nor care upon Begley's part, as matter of law, to keep on as he did merely because the plaintiff saw what he was doing and where he was tending. Begley might, as matter of fact, have been influenced by what he himself saw, or even by what he noticed that the plaintiff saw. But that was not the proposition. It was that if the plaintiff, from what he saw, could have avoided the collision, it was not negligence on Begley's part to keep on his course.

Both propositions were untenable, and were properly refused.

No other question is presented upon this appeal, except as to the

amount of damages. There is no just foundation for the claim that they were excessive. The verdict, for $3,500, was certainly substantial. It was, perhaps, even large. But it was not excessive, under the governing rule upon that head.

The judgment and order appealed from should be affirmed, with costs. All concur.