deed was to be delivered May 17, 1900. On May 19th, Philomena M. Smith, "individually and as general guardian for Anita Irene Cussen, Anita Irene Cussen [sic], and John Felix Smith, son of John F. Cleu," executed a quitclaim deed of the premises to the plaintiff. This deed attempted to convey the interest of Anita Irene Cussen, an infant under the age of 14 years. No authority for the execution of such conveyance by her as guardian of the infant is shown, and the deed was therefore fatally defective. The statute of limitations founded upon adverse possession has not run against Anita. John F. Cleu died in August, 1866. One of his daughters (Marie Philomena, the mother of Anita) became of full age February 1, 1884. Allowing 10 years for the statute to run against her, it would have run out in 1894. She, however, died in January, 1891, leaving Anita, her infant daughter, then about 3 years of age. Of course, the statute will not begin to run against her until she becomes of age. Section 375, Code Civ. Proc. It follows that the plaintiff had not a good title to the lot in question, either of record or by adverse possession, at the time of her contract of sale to the defendant, and has never tendered the conveyance of a good and sufficient title.

As both parties to this controversy seem desirous of fulfilling the contract, it is proper to suggest that the title might be perfected by an application to the court to dispose of the interest of the infant, Anita, under the provision of the Code providing for the disposition of the real property of infants. Code, § 2348 et seq.

The judgment should be reversed, and a new trial granted, with costs to abide the final award of costs. All concur.

---

(68 App. Div. 228.)

BERTSCH v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

1. STREET RAILWAYS—CROSSING—CONTRIBUTORY NEGLIGENCE—PERSONS CROSSING TRACK—RIGHTS—CHARGE.

Plaintiff, driving on a city street, saw a street car near him, going uptown on the nearest track, and a car coming downtown on the other track, at rapid speed, some 300 feet away. He checked his horse until the nearest car had passed, and drove back of it. When he reached the point where he could see the other car, his horse was on the track, and the car was coming at a rapid rate, and only 20 or 30 feet away. He whipped up his horse, but the hind wheels of his buggy were struck by the car, throwing him to the ground, and he was injured. *Held,* that the court properly refused to hold that plaintiff was guilty of contributory negligence in going on the track in front of the car, knowing that it was running at such rapid rate, since plaintiff had a right to presume that the speed of the car would be checked on approaching the crossing.

2. SAME—INSTRUCTION

Any error in charging that plaintiff "had the right to assume that the car would not be run in such a way as to endanger him" was obviated by adding, "Every person who uses the street crossings has a right to assume that the people who are operating street cars are exercising them with due regard to the rights of others, and that they will exercise ordinary care and prudence in their operation."

3. SAME—OPERATION OF CAR—NOTICE.
   Where a person driving to cross a street railway at a street crossing
   sees a car, running at a rapid rate, 300 feet distant, such fact is not
   notice to him of an intention to continue such rate of speed in disregard
   of the rights of others at the crossing.
4. SAME—DAMAGES—AMOUNT.
   Where plaintiff in a personal injury case—a young man—appears to
   have sustained the permanent crippling of a limb, in addition to tem-
   porary suffering, a verdict for $4,346.93 is not excessive.

Appeal from trial term, Kings county.

Action by George Bertsch against the Metropolitan Street Rail-
way Company. From a judgment in favor of plaintiff, and from
an order denying a new trial, defendant appeals.    Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, HIRSCHBERG, and JENKS, JJ.

Henry Melville (Henry A. Robinson, on the brief), for appellant.
Otto H. Droege, for respondent.

WOODWARD, J.  The evidence which the jury in this case ap-
pears to have accepted as giving a true statement of the accident in
which the plaintiff sustained serious injuries, and which is suffi-
cient to support the judgment, indicates that on the 19th day of
November, 1899, the plaintiff was driving a wagon westerly along
Waverly place, which crosses Sixth avenue, in the borough of Man-
hattan, at right angles, intending to cross the said avenue.  Before
reaching the tracks of the defendant, which operates two lines of
rails upon Sixth avenue, the plaintiff looked in both directions, and
saw a car approaching from downtown.  He drove forward, and
when about 15 feet from the first track, which was used for the
uptown cars, he looked uptown and saw a car about 250 to 300 feet
away coming downtown at a rapid rate.  He does not appear to
have stopped,—the uptown car passing him before he had reached
the tracks,—and his horse passed in the rear of the car going up-
town.  When the plaintiff's horse had reached the downtown track,
and the plaintiff was in a position to look uptown, he looked in the
direction of the approaching car, and found that it was only 20 or
30 feet away, still running at the same rate of speed at which it had
been advancing when he first saw it, some 300 feet away.  With mat-
ters in this situation, the plaintiff used his whip, and succeeded in
getting himself out of range of the car; but the rear wheel of the
vehicle was struck by the car of the defendant, and the wagon was
thrown over, the plaintiff was thrown upon the pavement, and the
injury of which he complains resulted.  The jury found a verdict in
favor of the plaintiff.  There was a clear conflict of evidence, the
defendant's witnesses testifying that the plaintiff's wagon was struck
by the car going uptown; but the jury refused to accept this version
of the accident, and brought in a verdict for the plaintiff, resulting
in a judgment for $4,346.93.  The defendant appeals from the judg-
ment, and from an order denying a motion for a new trial upon the
minutes.

The evidence of the plaintiff and his witnesses is that the car which
struck his wagon was running at the rate of 12 to 15 miles per

hour, and the defendant asks this court to hold that the plaintiff was guilty of contributory negligence in going upon the track in front of the car knowing that it was running at this rate. We think the learned court correctly charged the jury that the plaintiff had "the right to assume that the car coming south would not be run in such a way as to endanger him. Every person who uses the street crossings has a right to assume that the people who are operating street cars are exercising them with a due regard to the rights of others, and that they will exercise ordinary care and prudence in their operation. To that extent they have a right to rely upon the conduct of the people who are operating street cars." If the charge had closed with the first sentence, there might be doubt that it failed to state the law correctly, but, as modified and explained by the remainder of the charge, there is no reason to believe that the jury received any false impressions; for the charge says no more than that the plaintiff had a right to assume that the car of the defendant would be operated in a manner consistent with his rights at a street intersection, where both parties have an equal standing. If the car had approached this crossing under control, as was the duty of the defendant, there can be no doubt that the plaintiff would, in the exercise of that reasonable degree of care which the law demands of him as a condition of recovery, have been able to pass over in safety. Because the car was running at a rapid rate of speed 300 feet distant was no notice to the plaintiff that the defendant intended to continue this rate of speed in disregard of the rights of others at a street intersection, and the evidence clearly indicates that when the plaintiff next had an opportunity of observing the defendant's car it was so close upon him, and his horse was so far advanced, that the use of the whip was the only practical thing left. At least, the jury were justified in holding that the action of the plaintiff under the circumstances was an exercise of that degree of care which a reasonably prudent man would or should have used under similar circumstances, and the courts have been reluctant to hold that the plaintiff had failed to sustain the burden of proof under facts such as are here presented. It is not the duty of persons driving in a populous city to wait until there are no cars in sight. They have a right at street crossings precisely the same as those which belong to the street surface railroads, and, if these corporations will persist in operating their cars in disregard of this right of others, they must expect to settle for the damages which their negligence entails upon individuals. This case so closely resembles in its material facts that of Mowbray v. Railroad Co., 59 App. Div. 239, 69 N. Y. Supp. 435, that it does not appear necessary or profitable to discuss the matter further. The plaintiff's evidence is sufficient to support the judgment, and the damages do not appear to us excessive, where a young man bids fair to go through life with a permanently injured limb, and who has already suffered much by reason of the wrong done him by the defendant.

The judgment and order appealed from should be affirmed, with costs. All concur.